

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00334-CR

---

JOHN ELLIS ROBERTS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 413th District Court
Johnson County, Texas
Trial Court No. DC-F202000743, Honorable John Wilson Weeks, Presiding

---

February 5, 2024

## MEMORANDUM OPINION[1]

Before QUINN, C.J., and PARKER and DOSS, JJ.

John Ellis Roberts appeals from his conviction for the unlawful possession of a firearm by a felon. He challenges his conviction through five issues. We affirm.

### Background

This prosecution arose from a traffic stop conducted shortly before midnight. Officers were involved in a drug interdiction investigation and saw a truck leave the area

---

[1] Because this matter was transferred from the Tenth Court of Appeals, we apply its precedent when it conflicts with that of the Seventh Court of Appeals. TEX. R. APP. P. 41.3.

they were watching. They followed the truck and saw it turn right and cross a double yellow line separating lanes of traffic. Believing a traffic offense to have occurred, they initiated a traffic stop.[2]

Only one officer approached the vehicle, which truck happened to be registered to appellant. The officer found a woman driving and appellant in the passenger's seat. When asked for her license and insurance, the woman laughed. The officer thought that an odd response and began to wonder if she were intoxicated given the hour, the nature of the traffic violation, and response. That led him to question her about their destination. Appellant responded in her stead. Appellant also refused to provide the officer identification after interjecting himself into the exchange. That resulted in the officer's asking the driver to exit the truck and walk towards its tailgate area. Appellant followed without being invited. So too did he attempt to record the events about to transpire with his cell phone.

Being the only officer outside the squad car at the time and both occupants having exited the truck, the officer asked appellant to sit inside the truck. He so asked due to concerns for his safety at that time and place and because of his being unaware of appellant's actual intent. Appellant refused and continued to approach. Additional directives to return also went unheeded. By that time, an officer who had remained in the squad car radioed for backup and exited to assist his fellow officer. He arrived after the first officer had grasped appellant.

---

[2] *See* TEXAS TRANSP. CODE ANN. § 545.055(b) (stating that one operating a vehicle "may not drive on the left side of the roadway in a no-passing zone or on the left side of any pavement striping designed to mark a no-passing zone").

Appellant struggled and attempted to escape. That led the officer to force appellant to the ground and handcuff him. Later, the officer testified he detained appellant due to safety concerns and appellant's interference with his investigation into the driver's state of intoxication, if any.

While at the scene, the officers discovered appellant to be a convicted felon. Moreover, appellant admitted, while conversing with one of the officers, to having alcohol and firearms within the truck. The firearms purportedly were obtained from his deceased mother. According to an officer, appellant consented to a search of the truck, which search uncovered two small caliber pistols. The guns were found within a brown zippered pouch inside a piece of luggage. The latter also contained male clothing.

### *Issues One and Two*

Via his first and second issues, appellant questions the sufficiency of the evidence underlying his conviction. We address each and overrule them.

The standard of review is well-known and need not be reiterated. It suffices to cite the parties to *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) and represent that we abide by that standard here.

Appellant first contends that the State failed to prove the date on which he was released from supervision. Proving such date allegedly was imperative given the manner of the charge. The State accused appellant, via the indictment, of intentionally or knowingly possessing a firearm "after the fifth anniversary of [his] . . . release from supervision under community supervision, following the conviction of the felony at" somewhere other than his residence. *See* TEX. PENAL CODE ANN. § 46.04(a)(2) (stating that a "person who has been convicted of a felony commits an offense if he possesses a

3

firearm . . . after the period described by Subdivision (1), at any location other than the premises at which the person lives").

We find sufficient evidence in the record from which the factfinder could infer that appellant possessed a firearm at a place other than his home more than five years after his release from community supervision. That evidence includes a judgment signed May 20, 2009, memorializing his felony conviction for possessing a controlled substance. As illustrated therein, the trial court sentenced him to imprisonment for two years. In lieu thereof, the court suspended the sentence and ordered appellant to serve community supervision for five years. Application of mathematical principles means his community supervision ended on or about May 2014. Appellant possessed the firearm underlying the conviction at bar in May 2020. The latter date is more than five years after May 2014.

Appellant next believes that the State failed to prove he possessed the two handguns. His admission to the officers that he had firearms within his truck and that he obtained them from his deceased mother belies that. Simply put, evidence exists of record upon which a rational factfinder could conclude, beyond reasonable doubt, that appellant, a felon, possessed a firearm at a location other than his residence more than five years after being released from community supervision.

### *Issues Three and Four*

Through the next two issues, appellant complains of the trial court's alleged decision to become "a prosecutor involved in the fray." This occurred when it initially overruled the defendant's objection to evidence of a prior judgment, reconsidered and sustained the objection after the State rested its case in chief, and granted the State's request to reopen its case. That supposedly illustrated bias on the part of the court, which

4

bias warranted a mistrial. So, in allowing the State to reopen and denying mistrial, the trial court allegedly evinced bias and fundamental unfairness favoring the State. We overrule the issues.

The judgment alluded to was that allegedly proving appellant to be a previously convicted felon. What appellant complains of is the trial court's explanation to the State about why it decided to reconsider the earlier ruling and thereafter sustain appellant's objection. The trial court's reasoning consisted of the failure of the witness's authenticating the document to actually prove appellant was the individual named therein. The State questioned that reasoning at the time. The court replied by informing the State why the witness testimony fell short. Eventually, the State asked to reopen the evidence to correct the deficiency. Appellant objected, uttering that the trial court provided the State with "a roadmap" illustrating how to correct the deficiency while it should have "merely [said] objection sustained."[3]

No doubt, a trial judge must remain impartial and unbiased. Yet, none of the authority cited us by appellant require him or her to rule on an objection without comment to maintain that impartiality. None expressly obligates the judge to forego revealing the basis for the decision. Indeed, in ultimately sustaining appellant's objection, the trial judge hardly disfavored appellant. Assuming that the better course of action would be to say less, we hold that a court explaining its decision does not alone illustrate judicial bias or fundamental unfairness. Indeed, if telling a prosecutor that he neglected to ask a witness to identify the accused is not improper bias, then explaining why a court ruled as it did

---

[3] In objecting below, appellant said: "you [the judge] explained to the -- to the DA's office -- to the State exactly why you sustained my objection, giving them a roadmap to correct their mistake."

5

certainly is not. *See Cruz v. State*, No. 08-08-00213-CR, 2010 Tex. App. LEXIS 5971, at *26 (Tex. App.—El Paso July 28, 2010, no pet.) (mem. op., not designated for publication) (holding that though "it was improper for the trial judge to remind the prosecutor, even outside of the jury's hearing, that she had not asked a witness to identify the defendant but the error does not demonstrate judicial bias nor does it rise to the level of fundamental error").

As for granting the State's motion to reopen the evidence, such lay in the trial court's discretion. *Houston v. State*, No. 03-05-00188-CR, 2006 Tex. App. LEXIS 1521, at *9 (Tex. App.—Austin Feb. 24, 2006, pet. ref'd) (mem. op., not designated for publication). With that in mind, we note authority holding that the trial court did not abuse its discretion when granting such leave so the State could prove-up judgments needed to enhance the level of a crime. *Id.* at *2-3. This was held so despite the trial court's 1) inquiring "'about the evidence of the other convictions'"; 2) asking, "'[y]ou aren't going to put those in evidence?'"; and 3) suggesting that the State reopen to "put on any evidence of any of these other convictions . . . ." *Id.* Here, the trial court merely explained the basis for sustaining appellant's objection while responding to the State's arguments. It did not broach the matter of reopening the evidence. Our circumstances are far less suspect than those in *Houston*. So, if those in *Houston* evince no error, neither do ours. And, the trial court's having committed no error viz-a-viz the ruling, we cannot fault it for refusing to order a mistrial.

### Issue Five

Lastly, appellant argues the trial court erred in denying his motion to suppress evidence. We overrule the issue.

6

Our analysis begins with observing that the standard of review is abused discretion.  *State v. Hodges*, 595 S.W.3d 303, 305 (Tex. App.—Amarillo Jan. 8, 2020, pet. ref'd).  Under it, the appellant must illustrate that none of the grounds upon which the trial court could have relied were meritorious.  *See In the Interest of T. M.*, 33 S.W.3d 341, 348 (Tex. App.—Amarillo 2000 no pet.); *accord, State v. Aviles*, No. 10-07-00371-CR, 2008 Tex. App. LEXIS 2577, at *3-4 (Tex. App.—Waco April 9, 2008, no pet.) (mem. op., not designated for publication) (noting same when rejecting a claim that the trial court erred in denying a motion to suppress).  One such ground here was consent.  *See Ruiz v. State*, No. 07-14-00272-CR, 2015 Tex. App. LEXIS 4717, at *8 (Tex. App.—Amarillo May 7, 2015, no pet.) (mem. op., not designated for publication) (stating that "[s]ufficiently attenuated consent to search may render irrelevant a prior violation of the Fourth Amendment to the United States Constitution").  That is, the trial court heard an officer testify that appellant consented to the search of his vehicle.  Yet, appellant said nothing about that ground while attempting to illustrate that the court abused its discretion.  Instead, he discussed the propriety of the initial stop, the delay resulting thereafter, and the basis for his seizure.  Thus, he failed to satisfy his appellate burden to show error.

Having overrule each issue, we affirm the trial court's judgment.

Brian Quinn
Chief Justice

Do not publish.

7